**STEPHENS, BARONI, REILLY & LEWIS, LLP**
ATTORNEYS AND COUNSELORS AT LAW
NORTHCOURT BUILDING
175 MAIN STREET, SUITE 800
WHITE PLAINS, NY 10601
(914) 761-0300
(914) 683-5185

FAX (914) 761-0995
www.sbrllaw.com

ROLAND A. BARONI, JR.  rbaroni@sbrllaw.com
STEPHEN R. LEWIS  slewis@sbrllaw.com

COUNSEL
GERALD D. REILLY  greilly@sbrllaw.com
JOSEPH P. ERIOLE

NORTHERN WESTCHESTER OFFICE
OLD POST ROAD PROFESSIONAL BUILDING
CROSS RIVER, NEW YORK 10518

SERVICE NOT ACCEPTED
BY FAX OR EMAIL

February 1, 2022

*Via ECF*

Honorable Nelson S. Román
United States District Judge
United States Courthouse
Southern District of New York
300 Quarropas Street, Room 630
White Plains, New York 10601

Re: ***USA v. Nicolaus Wynberg***
     **20-Cr-386 (NSR)**

### SECOND SUPPLEMENTAL SENTENCING SUBMISSION

Dear Judge Román:

    In anticipation of Mr. Wynberg's sentencing before you now scheduled for February 10, 2022 at 1:00 p.m., I am writing to provide the Court with letters written on Mr. Wynberg's behalf that were received by my office on January 31, 2022 (see annexed Exhibit A, Letters 1-11).

<u>Letters of Support</u>

    These letters, 1-10, are written to you on his behalf by jail inmates, men who have interacted and come to know him over the last eighteen months of his incarceration. While these individuals may not be "pillars of the community," they are individuals who have lived with him on his cell block and come to know him during the very difficult period of incarceration due to the imposed COVID restrictions. They uniformly speak in a singular voice of a caring, empathetic soul who has listened, advised and tried to comfort their individual concerns, anxieties and fears; a recognized kindness we all may be wise to emulate. Also, letter number 11 is from Ron Hood, the coordinator of the jail's community-oriented re-entry program (CORE) which attests to Mr.

STEPHENS, BARONI, REILLY & LEWIS, LLP

Honorable Nelson S. Román
February 1, 2022
Page 2

Wynberg's full compliance with their program requirements and that they will support him in his future aftercare community re-entry plans.

### Response to January 29, 2022 Government Submission (Doc. No.: 48)

On Saturday January 29, 2022 the government filed another sentencing letter. Noticeably absent is any acknowledgement or justification for their inclusion of the ominous paintball gun under the caption "pistol recovered." They speak not a whisper of explanation. Instead, they include pictures of other weapons including two knives, a box of ammunition, a hunting bow (not a crossbow), and plant leaves. They also attempt to rewrite his medical history stating, "Before he was ever prescribed 30 mg of Adderall, Wynberg declared himself 'anticivilization' " (Document 48 p. 6). As has been aptly demonstrated, the dosage was 30mg four times per day. Even with my mathematical limitations, this amounts to a daily dosage of 120mg. The recommended maximum dosage of Adderall in treating ADHD is 40 mg per day and medically recognized adverse reactions include "psychosis, mania, aggressive behavior, sudden death" (see Exhibit B).[1]

The government reports "there is no indication in the record that Wynberg was "overmedicated" on Adderall at the time of his first weapons conviction in 2016. This also is inaccurate. As the attached prescription record from his then treating psychiatrist Dr. Hermele reveals, he was being prescribed Adderall since 2014 and at the time of his arrest in March of 2016 he was prescribed 100 mg per day (see annexed Exhibit C).

But they are missing the point. The offense conduct is not being blamed on a particular drug. Nicolaus Wynberg has been treated for mental illness for much of his life. Treatment records were reviewed by Dr. Bardey going back almost twenty years (see Bardey report, Exhibit 1, attached to defendant's December 22, 2021 submission, p. 3). His underlying mental illness, incorrectly treated by overprescribed stimulants, simply created the perfect storm. Dr. Bardey reports:

> Overmedicated and without a proper support system in place, Mr. Wynberg engaged in the conduct that led to his arrest. His actions were the materialization of psychologically defensive maneuvers to deal with the anxiety, fear, and isolation he felt. They were not, in my opinion, acts taken as a built-up [sic] to offensive and aggressive behavior. Rather, his intent was to appear invulnerable to the threats he perceived society presented to him, threats borne out of ongoing symptoms of PTSD and depression.

(*Id.*, p. 17).

---

[1] Epocrates--physician prescriber reference application:

https://online.epocrates.com/drugs/35901/Adderall/Adult-Dosing
https://online.epocrates.com/drugs/35905/Adderall/Adverse-Reactions

STEPHENS, BARONI, REILLY & LEWIS, LLP

Honorable Nelson S. Román
February 1, 2022
Page 3

Finally, attached to the government's Saturday January 29, 2022 submission on page five is a picture of an iron pipe with a zip tied battery pack wrapped with copper wire next to a cell phone. This photo was taken by one of the persons who lived in the house with Mr. Wynberg's landlord (see annexed discovery photo Exhibit D) and was used by the government in the search warrant application. It was not recovered by the FBI. It has always been maintained in discussions with the government that it had no capability of remote detonation. Again, it was not recovered in the search of his trailer, was never forensically examined, and the government cannot disprove the assertion that it could not be detonated.

The fact that two pipes containing smokeless powder recovered in the trailer had no fusing system is simply that: a fact. The FBI in their Laboratory Analysis recognized that even without a fuse, pipes containing smokeless powder could have exploded:

> Low explosive filler, such as double base smokeless powder, can be sensitive to friction, heat, impact and spark.
>
> * * *
>
> Therefore, even though there was no fusing system attached to these devices, the explosive material contained inside the two (2) pipes with end caps could have resulted in an explosion.[2]

Mr. Wynberg acknowledged this analysis by his plea, accepting that they were destructive devices capable of exploding. But to suggest that they were capable of remote detonation is not supported by the evidence recovered in the search of the premises or conversations with the defendant.

### Conclusion

Once again, we ask that this Court, after considering the medical history, Dr. Bardey's forensic report and the letters submitted in Mr. Wynberg's support, impose a fair sentence that is "sufficient but not greater than necessary."

Respectfully submitted,

Stephen R. Lewis

SRL:dc
Encl.
cc: AUSA T. Josiah Pertz (via ECF)

---

[2] FBI Laboratory Report, 8/20/20, discovery Bates stamp USAO_00155-001160, p. 4.